**Sandy Diana HIRRAS, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a Amtrak, Defendant.**

**Civ. A. No. SA–90–CA–1264.**

United States District Court, W.D. Texas, San Antonio Division.

Nov. 17, 1992.

James A. Kosub, Kosub & Gaul, San Antonio, TX, for plaintiff.

George P. Parker, Jr., Matthews & Branscomb, San Antonio, TX, Dana Kristen Stripling, Manor, TX, Kathleen J. Raynsford, National R.R. Passenger Corp., Associate Gen. Counsel, Washington, DC, for defendant.

### ORDER

WALTER S. SMITH, Jr., District Judge.

Came on to be considered the Defendant's Motion to Dismiss or for Summary Judgment. Plaintiff has filed a response to this Motion. Defendant has replied to this Response.

### I. *Background*

This is an action under Title VII of the Civil Rights Act of 1964 in which the Plaintiff, Sandy Diana Hirras ("Hirras"), claims that Defendant, National Railroad Passenger Corporation ("Amtrak"), discriminated against her because of her sex and sexually harassed her by tolerating a hostile work environment at the San Antonio station where she worked for less than five months as a ticket clerk.

Plaintiff claims that during her employment with Amtrak, she started receiving frightening telephone calls, threatening her with injury or death if she did not quit. She states that these calls were obscene and sexually derogatory. These calls, moreover, were received by her at her unlisted home number. She states that she received similar calls on restricted Amtrak telephone lines while at work. She asserts that she even received these calls after she went on disability while at her sister's house in Wisconsin.

In addition to the telephone calls, Plaintiff alleges that similarly obscene notes were placed on her car, threatening her with death or serious injury if she did not quit (attached as Exhibit 2 to her Response). Derogatory comments were also spray painted on the baggage room door at Amtrak telling her in sexual terms to quit Amtrak (attached as Exhibit 3 are photos).

Finally, Plaintiff asserts that employees of Amtrak exposed her to sexual statements and innuendos by showing her the pinups in the mechanic's office and telling her that it was the "Amtrak Gallery" and that she would have to pose nude for it.

Defendant points out that while Plaintiff was in Austin training, an Amtrak passenger was arrested in San Antonio for allegedly transporting drugs aboard the train. It was only after this incident that various Amtrak employees, male and female, began to receive threatening and harassing phone calls. The Defendant alleges that these calls were apparently related to the recent drug bust. As time went on, various Amtrak employees continued to receive these calls, both at home and work. Four different police enforcement groups were called in to investigate these incidents. Amtrak, moreover, conducted a thorough investigation of these telephone calls. Amtrak District Supervisor Neil Wright interviewed numerous employees and even provided Plaintiff with a Southwestern Bell Telephone "Customer Line Identification" form so that her home calls could be traced. Plaintiff cannot remember whether she requested such a phone tap. The identity of the callers has not been identified. Mr. Wright similarly investigated the note left on Plaintiff's car, and the graffiti painted on the baggage door. No suspects have been identified.

## II. *Motion to Dismiss*

■ A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum and Chemical Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982) quoting 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 at 598 (1969). It is well settled that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Boudeloche v. Grow Chemical Coatings Corps.*, 728 F.2d 759, 762 (5th Cir.1984); *Kaiser*, 677 F.2d at 1050. When considering such a motion, the complaint must be liberally construed in the plaintiff's favor, and all facts pleaded in the complaint should be accepted as true. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir.1986). "The question therefore is whether in the light most favorable to Plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 Wright and Miller, *Federal Practice and Procedure*, Section 1357 at 601.

## III. *Discussion*

■ Defendant argues that because Plaintiff's Title VII claim is subject to mandatory arbitration under the Railway Labor Act, this Court lacks subject matter jurisdiction over the present action. Plaintiff argues that the mandatory dispute resolution provisions of the Railway Labor Act do not apply to the statutory provisions of Title VII of the Civil Rights Act. This Court agrees with the Defendant, and grants the motion to dismiss because of lack of subject matter jurisdiction.

In *Gilmer v. Interstate/Johnson Lane Corp.*, — U.S. ——, ——, 111 S.Ct. 1647, 1650, 114 L.Ed.2d 26 (1991), the Supreme Court held that a claim under the Age Discrimination in Employment Act of 1967 ("ADEA") "can be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application." Similarly, in *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229, 230 (5th Cir.1991), the Fifth Circuit, citing *Gilmer*, held that "Title VII claims, like ADEA claims, are subject to arbitration under the Federal Arbitration Act ("FAA")." The arbitration clause in *Alford* was located in a stockbroker's contract with the securities exchange. Because of the unambiguous pronouncements from the Supreme Court and the Fifth Circuit, the sole inquiry for this Court is whether the Railway Labor Act ("RLA") compels arbitration of this Title VII claim. Neither *Gilmer* nor *Alford* specifically dealt with this issue.

As the Supreme Court has recognized repeatedly, the RLA requires that all railroad employee disputes arising from the interpretation or application of collective bargaining agreements, so called "minor disputes," be resolved through mandatory arbitration. 45 U.S.C. §§ 151a(5), 152 (First), & 153. The RLA vests Boards of Adjustment with exclusive jurisdiction over the resolution of all such disputes. *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

■ The Supreme Court has liberally construed the broad scope of exclusive jurisdiction accorded RLA adjustment boards, holding that its mandatory arbitration provisions cover not only disputes arising under a collective bargaining agreement, but also those that are *independent* of the agreement whenever "the claim is founded upon some incident of the employment relation." *Elgin, Joliet & Eastern R.R. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945). Accordingly, virtually any dispute between a railroad and a railroad worker that arises out of the employment relationship is subject to mandatory arbitration, regardless of whether it involves the collective agreement or is independent of that agreement. For example, in *Morales v. Southern Pac. Transp. Co.*, 894 F.2d 743, 745 (5th Cir.1990), the Fifth Circuit held

State law claims which grow out of the employment relationship can constitute "minor disputes" under the Act, even when the claims do not arise from the collective bargaining agreement itself. [citation omitted] If the state law claim is "inextricably intertwined" with the terms and conditions of employment under the collective bargaining agreement, the claim consti-

tutes a "minor dispute" under the Act and is subject to the grievance procedures contained in the bargaining agreement. [citation omitted]

In the *Morales* case, the Court found that the state law claims could not be properly adjudicated without considering the terms and conditions of the collective bargaining agreement.

The Plaintiffs cite *Atchison, Topeka & Sante Fe R.R. v. Buell,* 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), for the proposition that the RLA does not preclude a suit for damages under Title VII. *Buell* dealt with a personal injury suit under the Federal Employers' Liability Act ("FELA"). The Supreme Court held that the mandatory arbitration provisions of the RLA did not deprive the railroad employee of the right to bring a FELA action for damages. The Court reasoned that Congress, in enacting the RLA twenty years after FELA, could not have "intended that a worker suffering a disabling injury would be denied recovery under FELA simply because he might also be able to process a narrow labor grievance under the RLA to a successful conclusion." *Buell* at 565, 107 S.Ct. at 1415. The Supreme Court was careful in tailoring its ruling to the narrow fact situation presented. The Court noted that "the RLA remedy for the resolution of minor disputes is 'in at least some situations' exclusive." *Id.* (citing *Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972)).

Whether a suit under Title VII is subject to the mandatory arbitration provisions of the RLA is an issue of first impression in this Circuit. This Court is of the opinion that given the liberal interpretation of the arbitration provisions of the RLA, and the nature of the injury complained of by the Plaintiff, this suit involves a "minor dispute" which is subject to mandatory arbitration under the RLA. This is not a suit for personal injuries under FELA, thus the rule in *Buell* does not apply. Therefore, this Court adopts the reasoning set forth by Magistrate Judge O'Connor in *Newton v. Southern Pac. Transp. Co.,* SA–91–CA–1024, 1992 WL 354186 (September 29, 1992), and holds that Plaintiff's claims should be dismissed.

### IV. *Conclusion*

Based upon the foregoing, it is clear that Plaintiff's claim should be dismissed without prejudice. Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED.** It is further

**ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE.** It is further

**ORDERED** that all pending motions not previously ruled on are **DENIED** as moot.